Dickman, J.
The statutes of Ohio, in plain language, give a guardian power to sell his ward’s personal estate, only “when for the interest of the ward.” But, it may be well inquired, whether after the ward’s personal estate has been disposed of by the guardian, at the sacrifice of the ward’s interest, there can be no other remedy for the ward, than a removal of the guardian and an action against the sureties ? Is the property itself to be irrecoverable beyond reach? The guardian is a trustee, and if one buys from him the ward’s personal estate, with actual or constructive *93 notice that the same is held in trust, and under circumstances furnishing reasonable grounds to believe that the sale is not for the ward’s interest, the purchaser can acquire no title to the property, if the guardian misappropriates the proceeds of the sale. In such a case, the purchaser is put upon inquiry; he buys at his peril; he can stand in no better position than the guardian himself, and must be held to be a trustee for the wards.
In this case, the defendant, Raphael Strauss, at the time he bought the notes, was informed as to their origin, and the title of the real estate mortgaged to secure them. An inquiry into the title doubtless disclosed the fact, that the real estate of the wards had been sold, and said notes taken as purchase-money notes for the deferred payments. The notes on their face plainly told that they belonged to a trust fund. They were put by William Rankin, the guardian, into the hands of a broker for sale; and the defendant purchased them for less than their face value. In buying them — although executed by a solvent maker and secured by mortgage — the defendant realized that he was purchasing at his peril, and that he was running a risk in taking the endorsement of Rankin in his fiduciary capacity alone, and therefore required, in addition, his individual indorsement. In paying for the notes — by drawing his checks to Rankin individually, and not as guardian, the defendant contributed to the concealment of the fact, that Rankin was receiving the money as a trust fund. The defendant apparently gave no thought to the interest of the wards. It is not claimed that he made any inquiry of Rankin himself, or in any way sought information, as to whether the interest of the wards would be promoted or sacrificed, by the guardian’s sale of the notes. It may be said that it would have been of no avail to make inquiry of the guardian himself, who committed the breach of trust. But, there is much force in the words of Sir John Romilly, master of the rolls, in a leading case, Jones v. Williams, 24 Beav., 62.
“With respect to the argument that it was unnecessary to make any inquiry, because it must have led to no results,” *94 he says, “I think it impossible to admit of the validity of this excuse. I concur in the doctrine of Jones v. Smith, 1 Hare, 55, that a false answer or a reasonable answer, given to an inquiry made, may dispense with the necessity of further inquiry; but, I think it impossible beforehand to come to the conclusion, that a false answer would have been given which would have precluded the necessity of further inquiry.”
We cannot resist the conclusion, that the defendant at the time he bought the notes, had sufficient warning to put him upon a more thorough inquiry, than that which he is shown to have made. Thus put upon inquiry, he might easily have removed all doubt and fortified himself, by declining to purchase the notes, unless the guardian would first obtain leave to sell the same, by application to the probate court.
Instead of an unmistakable trust fund to be regarded as sacred, the defendant treated the notes in the hands of the broker as ordinary commercial paper. We do not think the notes in question should have been so classed. Made payable as they were to the order of William Rankin, guardian of the minors respectively named in the body of the notes, they could not have the unrestricted circulation of commercial paper, or bills of exchange and promissory notes negotiable by the law merchant. Far from being treated as commercial paper, bought1 before maturity, in the usual course of trade, for a fair value, we consider it the better rule, to hold the defendant as charged with notice of the peculiarly trust character of the notes, and as bound to exercise that high degree of caution in purchasing the same, which the protection of such trust funds demands.
Not long after the purchase of these notes by the defendant, Raphael Strauss, the financial condition of Rankin culminated in an assignment by^ him, of all his property, for the benefit of his creditors; and no portion of the proceeds of the sale of the notes, has ever been accounted for by him to his wards, or the guardian who succeeded him.
In the case at bar, we think, that the circumstances under *95 which the defendant came into the possession of said notes and mortgage, were such as to give him no title to the same, and that he must be held to have taken the same in trust for the wards.
Judgment of the district court reversed, and that of the court of common pleas affirmed.